IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WAMPLER, | ) | CASE NO. 3:17CV2136 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN JAMES HAVILAND, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Timothy Wampler ("Petitioner" or "Wampler") brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1. Wampler is detained at the Allen Oakwood Correctional Institution, having been found guilty by a Lucas County, Ohio, Court of Common Pleas jury of six counts of rape. *State v. Wampler*, Case No. G-4801-CR-0201401713-000 (Lucas Cty. Common Pleas Ct., filed January 16, 2016). At sentencing, the trial court sentenced Wampler to life in prison without the possibility of parole on each count. Doc. 7-1, p. 83.

On October 4, 2017, Wampler filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief. Doc. 1, pp. 5-14. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Grounds 2 and 5 are not cognizable and Grounds 1, 3, 4, and 6 fail on the merits. Thus, the undersigned recommends that Wampler's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Lucas

County Court of Appeals, Sixth Appellate District of Ohio:[1]

> {¶ 2} Ch.L. and P.L. are the parents of M.H. (male, born in 2004), C.L. (male, born in 2006), N.L. (male, born in 2008), E.L. (female, born in 2011), Z.L. (male, born in 2012), and D.L. (male, born in 2013).[1] On February 16, 2014, Ch.L. entered M.H.'s room and found then three-year-old E.L. under a blanket with M.H. on top of her. She was lying face down and her tights were pulled down; M.H.'s pants were also pulled down and he was trying to insert himself inside of her. Ch.L., horrified, began yelling at M.H. to get out of his house. Ch.L. tended to E.L. then went outside. He returned inside to find M.H. curled up on the floor, crying to P.L. and repeatedly saying, "I'm only doing what Tim told me to do. I'm only doing what Tim showed me to do." Ch.L. called 9–1–1.

> [FN1] Ch.L. is not the biological father of M.H. and C.L.

> {¶ 3} "Tim" is Timothy Wampler, the appellant in this case. Wampler is Ch.L.'s cousin and was living with the family in October through December of 2013. In response to Ch.L.'s 9–1–1 call, a Washington Township police officer was dispatched to the home. M.H. reported to the officer that Wampler had inappropriately touched him, C.L., and N.L. The boys were ultimately interviewed at the Child Advocacy Center ("CAC") and underwent sexual assault examinations. The examining physician diagnosed M.H. and C.L. as having been sexually abused, and based on his inability to provide any details beyond that Wampler had done "bad stuff," N.L. was diagnosed as having been allegedly sexually abused. Wampler was indicted on May 1, 2014, on six counts of rape, violations of R.C. 2907.02(A)(1)(b) and (B).

*State v. Wampler*, 2016 WL 3574571, at *1 (Ohio Ct. App. June 30, 2016).

#### 2.  Procedural History

On May 1, 2014, a Lucas County Grand Jury issued an indictment charging Wampler

with six counts of rape, R.C. 2907.02(A)(1)(b) and (B), against victims under the age of 13

(Counts 1-6).  Doc. 7-1, pp. 5-9.  Wampler, through counsel, requested a bill of particulars

---

[1]  Wampler has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

2

detailing the specific acts constituting the charged offenses and argued that the indictment failed to provide him notice of the charges against him. Doc. 7-1, p. 10. The state responded by adding the names of the specific victims to each count; it also asserted that it had provided "open-file discovery" to Wampler, including allowing him to inspect the state's file. Doc. 7-1, pp. 15-18. Wampler, through counsel, filed a motion to dismiss the indictment; the state filed an amended bill of particulars, giving more specific dates for the offenses, correcting a date, identifying the three minor victims, and adding specific acts to all the counts. Doc. 7-1, pp. 10, 31-35. At a pretrial hearing, the trial court denied Wampler's motion to dismiss. Doc. 7-1, p. 36.

Wampler and the state moved for a competency hearing for the three alleged victims, all under the age of ten. Doc. 7-1, pp. 37-44. The trial court conducted competency hearings for two of the alleged victims and found them competent to testify. Doc. 7-1, p. 46; Doc. 7-3.

Wampler filed a motion in limine to exclude any testimony regarding any alleged uncharged past misconduct on his part. Doc. 7-1, pp. 47-53. The state opposed the motion, explaining that it wanted to introduce other acts evidence (a 2007 juvenile adjudication for pandering, in order to show motive) and evidence that Wampler showed the victims pornography on his cell phone. Tr. 7-1, pp. 54-58. Wampler filed a response. Doc. 7-1, pp. 59-62. After a hearing, the trial court decided to reserve ruling on the matter but instructed counsel not to discuss these matters in their opening statements. Doc. 7-1, p. 63.

The state filed a notice of intent to introduce a redacted version of a recorded telephone conversation Wampler had had when he was held at the Lucas County Corrections Center. Doc. 7-1, pp. 64-66. It also moved to amend the indictment to reflect that all three victims were under the age of ten at the time of the offenses, which the trial court permitted. Doc. 7-1, p. 68.

3

The case proceeded to trial.  At the close of the state's case, Wampler moved for an Ohio Crim. R. 29 acquittal, which the trial court denied.  Doc. 7-1, p. 69.  The jury found Wampler guilty on all counts.  Doc. 7-1, p. 82.  The trial court sentenced Wampler to life in prison without parole for each count.  Doc. 7-1, p. 83.

**B. Direct Appeal**

Wampler, through new counsel, appealed to Ohio Court of Appeals.  Doc. 7-1, p. 88.  In his brief, he raised the following assignments of error:

1. The evidence at appellant's trial was insufficient to support the convictions.

2. Appellant's convictions are against the manifest weight of the evidence.

3. The trial court erred by allowing improper evidence before the jury.

4. The trial court erred in denying appellant's motion to dismiss.

5. The trial court erred in finding N.L. competent to testify as a witness.

6. Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

Doc. 7-1, p. 89.  On June 30, 2016, the Ohio Court of Appeals affirmed the trial court's judgment.  Doc. 7-1, pp. 168-196.

On July 25, 2016, Wampler, pro se, filed a notice of appeal with the Ohio Supreme Court.  Doc. 7-1, 197.  In his memorandum in support of jurisdiction, he raised the following propositions of law:

I. The evidence at appellant's trial was insufficient to support the convictions.

II. Appellant's convictions are against the manifest weight of the evidence.

III. The trial court erred by allowing improper evidence before the jury.

IV. The trial court erred in denying appellant's motion to dismiss.

V. The trial court erred in finding N.L. competent to testify as a witness.

VI. Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

Doc. 7-1, p. 202. On October 26, 2016, the Ohio Supreme Court declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). Doc. 7-1, p. 242.

### C. Motion to Correct Void Judgment

On March 2, 2017, Wampler, pro se, filed a motion to correct a void judgment pursuant to Ohio Crim. R. 32 in the trial court. Doc. 7-1, p. 243. He argued that he had not been sentenced individually on each count and was instead given a packaged sentence. Doc. 7-1, p. 244. The trial court denied his motion on May 16, 2017. Doc. 7-1, p. 255. On June 12, 2017, Wampler moved to withdraw his motion to correct void judgment (Doc. 7-1, p. 257) and the trial court granted his motion to withdraw on July 24, 2017 (Doc. 7-1, p. 258).

### D. Federal Habeas Petition

On October 4, 2017, Wampler, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

<u>**Ground One**</u>: The evidence at appellant's trial was insufficient to support the convictions.

**Supporting facts**: This court held that there is sufficient evidence of anal intercourse, for purposes of the crime of anal rape under R.C. 2907.02. The State failed to establish the essential elements of the offenses of rape, beyond a reasonable doubt, there was insufficient evidence to support the appellant's conviction as a matter of law.

<u>**Ground Two**</u>: Appellant's convictions are against the manifest weight of the evidence.

**Supporting facts**: Convictions of rape are against the manifest weight of the evidence, the convictions should be reversed.

<u>**Ground Three**</u>: The trial court erred by allowing improper evidence before the jury.

**Supporting facts**: The trial court deprived the petitioner his right to due process by abusing its discretion in several very significant evidentiary rulings involving hearsay and his character. The state allowed evidence statements made by the accusers to 3rd parties. The first instance were statements M.H. made to the Washington Township police. Mr. Lopez was permitted to testify that M.H. told the officer that the petitioner

had engaged in inappropriate conduct with C.L. and N.L. (Tr. 214). Additionally, he was permitted to testify what C.L. and N.L. told law enforcement. (Tr. 257-58).  Furthermore, the trial court erred by permitting the petitioner's testimony regarding alleged "grooming" of the accusers and pedophilia, which was totally irrelevant pursuant to Evid.R. 402.  The trial court's errors affected his constitutional and substantial rights to due process and right to a fair trial as guaranteed under our Sixth Amendment.

**Ground Four**: The trial court erred in denying appellant's motion to dismiss.

**Supporting Facts**: Appellant filed said motion on July 22, 2014 requesting the court to dismiss the indictment against him for its failure to provide adequate notice of the charges against him and to protect him from future jeopardy.  The prosecution does not provide information sufficient to delineate distinguishable incidents of alleged conduct, as such the indictment should have been dismissed. Therefore the trial court committed error when it denied appellant's motion to dismiss, appellant's conviction and sentence must be reversed.

**Ground Five**: The trial court erred in finding N.L. competent to testify as a witness.

**Supporting Facts**: The trial court committed error when they found N.L. competent to stand trial. The trial court also erred in finding N.L. competent to testify as a witness at trial. Pursuant to Evid.R. 601 it was the responsibility of the trial judge to determine through questioning whether N.L. was capable of receiving just impressions of facts and events and to accurately relate to them. The trial court failed to take into consideration N.L.'s ability to communicate what was observed, understanding of the truth and falsity, and responsibility to be truthful.

**Ground Six**: Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

**Supporting Facts**: The petitioner was denied effective assistance of counsel under the Strickland standards. Because the state's indictment and bill of particulars were insufficient and his counsel's acquiesce on the issue of particularity of the indictment resulted in Wampler's case continuing to a jury trial and conviction. There was a reason of probability that but for his counsel's unprofessional errors, the result of the proceedings be different in his conviction.

Doc. 1, pp. 5-14.  On December 14, 2017, Respondent filed a Return of Writ (Doc. 7) and, on

July 11, 2017, Wampler filed a Traverse (Doc. 18).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

petitioner must meet certain procedural requirements in order to have his claims reviewed in

federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).

"Procedural barriers, such as statutes of limitations and rules concerning procedural default and

exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."

*Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are

"still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural

default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

        In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either

that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable

application of, clearly established federal law as determined by the United States Supreme Court

("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings

("unreasonable application" clause).  *Id*.

        "Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court

arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a

question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529

U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court

may grant the writ if the state court identifies the correct governing legal principle from th[e]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.

at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme

Court's decisions as of the time of the relevant state court decision, as well as legal principals

and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

#### A. Ground 1 fails on the merits

In Ground 1, Wampler argues that there was insufficient evidence to support a finding of anal intercourse to convict him of anal rape and that the state failed to establish the essential elements of the rape offenses beyond a reasonable doubt.  Doc. 1, p. 5.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the trier of fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").  On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650 (2012).  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered Wampler's sufficiency of the evidence claim along with his manifest weight claim:

> {¶ 52} In his first assignment of error, Wampler claims that the evidence was legally insufficient to support his convictions, and in his second assignment of error, he claims that his convictions were against the manifest weight of the evidence.
>
> {¶ 53} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing

the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 54} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L–10–1369, 2012–Ohio–6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 55} We begin with Wampler's claim that the evidence was insufficient to sustain his convictions on six counts of rape. He argues that (1) there was no physical evidence to support the children's claims, (2) there were no eyewitnesses, (3) the only evidence was the testimony of M.H. and C.L., (4) N.L. testified at trial that he could not remember what happened, (5) the children did not report the abuse until almost two months after he moved out, (6) the opinions of the state's expert were based solely on the children's statements, (7) the children's statements are insufficient to establish beyond a reasonable doubt that Wampler engaged in sexual conduct with them, and (8) the defense expert testified that the children's interviews were not properly conducted. He also claims that the events as established at trial are not credible.

{¶ 56} According to Wampler, the evidence at trial established that the family's home was small. M.H., C.L., and N.L. shared a bedroom, and their bedroom did not have a door—a blanket hung where the door would be. Ch.L. and P.L. slept with their door open and P.L. testified that she could hear what transpired in the home. The family also owned two Pomeranian dogs and those dogs barked when the children played rough or when people walked through the home at night. Wampler claims that despite the family living in close quarters and the presence of dogs, neither Ch.L., or P.L., nor anyone else in the home ever heard anything strange or walked in on anything inappropriate. Wampler insists he was never left alone with only one child at a time and that P.L. was home both day and evening hours unless she was running errands or taking the children to doctors' appointments. Based on these facts, Wampler maintains that it is implausible that he could have raped the children.

{¶ 57} In this assignment of error, Wampler is essentially challenging the credibility of the witnesses. We do not weigh credibility on a claim of legal insufficiency. But even under a manifest-weight standard, we find no error here.

10

{¶ 58} First, according to the evidence presented, Wampler raped the boys in front of each other. So to say that no one in the home ever heard anything strange or walked in on anything inappropriate is directly contrary to the evidence. Second, "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction." *State v. Reinhardt*, 10th Dist. 04AP–116, 2004–Ohio–6443, ¶ 29. "[T]he testimony of a rape victim, if believed, is sufficient to support each element of rape." (Internal citations omitted.) *Id*. In addition, "corroborating physical evidence is unnecessary in a rape case." *State v. Birt*, 2013–Ohio–1379, 5 N.E.3d 1000, ¶ 48 (12th Dist.).

{¶ 59} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L–10–1162, 2012–Ohio–616, ¶ 14. Here, the jury observed the witnesses' testimony, weighed the evidence, resolved any inconsistencies in the testimony, considered the totality of the evidence, and found Wampler guilty. We find no error in its conclusion.

{¶ 60} Wampler contends that even if the court finds that there was sufficient evidence beyond a reasonable doubt, the evidence was insufficient to establish that the inappropriate touching satisfied the definition of sexual conduct as it relates to N.L. because "[t]he only statement in the record as to what N.L. allegedly reported was that appellant put his penis at his butt, not in his butt." He maintains that for anal intercourse to occur there must be some evidence of insertion; contact with the buttocks alone is insufficient.

{¶ 61} When questioned by the CAC interviewer, N.L. reported anal penetration:

> Q: Where did he put his penis?
> A: My butt.
>
> * * *
> Q: He only put his penis in your butt?
> A: [Nodded affirmatively.]
>
> * * *
> Q: How many times do you think it happened?
> A: A lot.

{¶ 62} But even setting this aside, N.L.'s brother, C.L., witnessed Wampler anally penetrate N.L. C.L. testified:

> Q: Okay. Let's talk about [N.L.]. Did you see anything with [N.L.]?
> A: I seen the same things with [N.L.] I didn't know how many times he did it with [N.L.] because I wasn't in the room some of the times.

> Q: How many times do you think you were in the room?
> A: One or two times.
> Q: And what did you see him do to [N.L.]?
> A: Put his front private in [N.L.'s] back private and put his front private in [N.L.'s] mouth.

{¶ 63} Thus, contrary to Wampler's assertions, there was sufficient evidence of anal penetration of N.L.

{¶ 64} We find Wampler's first and second assignments of error not well-taken.

*State v. Wampler*, 2016 WL 3574571, at *10-13 (Oh. Ct. App. June 30, 2016).

Here, the Ohio Court of Appeals applied the same, correct, sufficiency standard as articulated in *Jackson v. Virginia*. In his Traverse, Wampler again complains that there was no physical or corroborating evidence and questions the credibility of the witnesses. Tr. 18, pp. 7-8. But, as the Ohio Court of Appeals explained, there need not be physical or corroborating evidence for a rape conviction and appellate courts do not assess the credibility of witnesses when reviewing an attack on the sufficiency of the evidence. The Ohio Court of Appeals' determination that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt was not unreasonable. *Jackson*, 443 U.S. at 319. Ground 1 fails on the merits.

**B. Ground 2 is not cognizable**

In Ground 2, Wampler argues that his conviction is against the manifest weight of the evidence. Doc. 1, p. 7. Federal habeas corpus relief is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010). A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas case. *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

Because Wampler's manifest weight of the evidence claim in Ground 2 rests solely on state law, it is not cognizable on federal habeas review.  *See id.*

### C. Ground 3 fails on the merits

In Ground 3, Wampler argues that the trial court erred when it made the following evidentiary rulings: allowing the jury to hear statements made by the victims to third parties and certain expert testimony.  Doc. 1, pp. 8-9.

The Ohio Court of Appeals considered Wampler's claim with respect to statements made by the victims to third parties:

{¶ 28} Wampler claims that the trial court erred when it allowed Ch.L. and P.L. to testify about out-of-court statements made by M.H., C.L., and N.L. He also contends that the court erred because it allowed the state to play the recorded interviews of the children.

{¶ 29} With respect to Ch.L. and P.L.'s testimony, the state insists that the children's statements to law enforcement officers qualify as excited utterances under Evid.R. 803(2). It also maintains that admission of the statements was harmless because they mirrored properly-admitted trial testimony. With respect to the recorded interviews, the state counters that Daniel Swerdlow–Freed, Ph.D., Wampler's expert psychologist, placed the interviews at issue when he criticized the manner in which the interviews were conducted. And again, the state argues that even if admission of the tapes was error, it was harmless because the children testified at trial.

{¶ 30} A trial court has broad discretion concerning the admission of evidence and its rulings on such matters will not be disturbed absent an abuse of discretion. *State v. Valsadi*, 6th Dist. Wood No. WD–09–064, 2010–Ohio–5030, ¶ 40. An abuse of discretion is more than an error in judgment or mistake of law. "Abuse of discretion" connotes that the court's attitude is arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 31} The first instance of hearsay identified by Wampler involved Ch.L.'s description of what M.H. told the officer who responded to Ch.L.'s 9–1–1 call. Ch.L. testified:

Q: [Ch.L.], I asked you about what your son had said to the police officer regarding others. Was there any other people that he had mentioned?
A: Yes.
Q: Who?
A: He had mentioned his younger brother [C.L.].
* * *
Q: And what did he mention about [C.L.]?
* * *

13

A: He had mentioned that Tim had done the same things—he had witnessed Tim
doing the same things to [C.L.].
Q: Did he say what that you recall?
A: No, not that I recall.
Q: And what did he say about [N.L.]?
A: That he had also touched [N.L.].

{¶ 32} The next instance identified by Wampler is the following testimony by P.L.:

Q: And what did [M.H.] tell the officer?
A: [M.H.] told the officer that Tim had touched him, and the officer went into
more details as to if [M.H.] had his clothes on or off, and [M.H.] said that there
were times that Tim touched him through his clothes and with his clothes off. He
asked him where in my house did it take place, and [M.H.] said everywhere, and
he pointed to different rooms. He mostly pointed to my love seat that was sitting
inside the house, the same love seat that Tim had slept on. And told that he also
watched him do it to his other brothers.

* * *

Q: Did [C.L.] eventually tell the officer what happened?
A: Yes, he did.
Q: And what did he say?
A: He said he had it in his mouth, and the officer asked what did you have in
his—or what did he have in your mouth, and [C.L.] said his pee-pee, and the
officer asked him other questions as far as was he touched, where was he touched,
clothes on, clothes off, and [C.L.] answered them that he was touched in his
genital area and clothes were on and clothes were off as well.
Q: And then [N.L.] got confronted?
A: Yes, [N.L.] did.
Q: And when [N.L.]—and were you present for that?
A: Yes, I was.

* * *

A: The officer asked him again just like he asked the other two boys was he
touched by the defendant, and he said, yes, and he said that he was touched, and
[N.L.] based his abuse mostly inside of the bedroom that he said there was a lot of
times that Tim came inside the bedroom while he was underneath the blanket and
he would reach his hand under and touch, and his clothes would be off at that
point.

{¶ 33} Evid.R. 803(2) provides that "[t]he following are not excluded by the hearsay rule,
even though the declarant is available as a witness: * * * (2) Excited utterance. A
statement relating to a startling event or condition made while the declarant was under the
stress of excitement caused by the event or condition." The Ohio Supreme Court in *State
v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993), explained the justification for
this hearsay exception:

Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity. *Id*., citing 1 Weissenberger's Ohio Evidence (1992), Section 803.16.

{¶ 34} While courts are reluctant to find a statement to be an "excited utterance" when a long period of time has elapsed between the event and the statement, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *Id*. at 303; *State v. Duncan*, 53 Ohio St.2d 215, 220, 373 N.E.2d 1234 (1978) "[T]he question is whether the declarant is still under the stress of nervous excitement from the event." *State v. Fox*, 66 Ohio App.3d 481, 489, 585 N.E.2d 561 (6th Dist.1990). The Ohio Supreme Court has upheld the admission of statements made by children who were sexually assaulted even after a substantial lapse of time. It has done so because "children are likely to remain in a state of nervous excitement longer than would an adult," and because of its recognition that young children possess "limited reflective powers." *Taylor* at 304. The "[i]nability to fully reflect makes it likely that the statements are trustworthy." *Id*.

{¶ 35} In *State v. Kincaid*, 9th Dist. Lorain Nos. 94CA005942, 94CA005945, 1995 WL 608407, *4 (Oct. 18, 1995), the court found statements of a six-year-old child to be "excited utterances" despite the fact that the statements were made months after she had been sexually abused. In *State v. Ames*, 12th Dist. Butler No. CA2000–02–024, 2001 WL 649734, *5–6 (June 11, 2001), the court permitted testimony about statements made by the child-victim approximately two months after the sexual abuse occurred. And in *State v. Stipek*, 7th Dist. Belmont No. 92–B–59, 1995 WL 152488, *1 (Mar. 30, 1995), the court permitted testimony about statements made by the 16–year–old victim four-to-six weeks after the sexual abuse had occurred. In addition to this, courts have held that the event producing the excitement may be "a subsequent event that caused the 'stress of excitement' of the earlier sexual assault to reoccur." *State v. Butcher*, 170 Ohio App.3d 52, 2007–Ohio–118, 866 N.E.2d 13, ¶ 33 (11th Dist.).

{¶ 36} "A reviewing court should give the trial court wide discretion when the trial court decides that statements made by a child-victim about sexually abusive acts qualify as excited utterances." (Citations omitted.) *Ames* at *5. The court must look to the facts and circumstances of the particular case in determining "whether the time between an exciting event and the exclamation of the declarant is sufficient to be deemed an excited utterance." *State v. List*, 9th Dist. Summit No. 17295, 1996 WL 221899, *2 (May 1, 1996), citing *State v. Duncan*, 53 Ohio St.2d 215, 219, 373 N.E.2d 1234 (1978).

{¶ 37} Here, Ch.L. and P.L. described a chaotic and highly stressful scene. Ch.L. walked in on M.H. with his pants pulled down trying to insert himself into three-year-old E.L. Ch.L. testified that he started screaming, "get the fuck out of my house. [M.H.] get the fuck out." According to P.L., "the whole house just came to a halt." Ch.L. stormed out of the house and returned to find M.H. lying in fetal position on the floor, crying to his mother and telling her how he was doing what Wampler had done and what Wampler had

shown him. That's when Ch.L. called the police. Although the statements at issue were made approximately two months after the abuse ended, the circumstances as described lead us to conclude that the trial court did not abuse its discretion in admitting the statements under Evid.R. 803(2).

{¶ 38} Turning to the admission of the videotaped interviews of the children, Dr. Swerdlow–Freed testified about the protocol for interviewing children who are alleged to have been abused. On direct examination, he opined that the forensic interviewer from the CAC made a number of mistakes in interviewing M.H., C.L., and N.L. by (1) failing to establish ground rules with the children, (2) making suggestive prompts in seeking information, (3) exhibiting interviewer bias, and (4) failing to ask open-ended questions. Dr. Swerdlow–Freed concluded that because of the nature and pervasiveness of the interviewer's mistakes, it was unlikely that she had obtained a reliable account from the children. His report—where specific questions and answers from the interview were cited to illustrate his criticisms—was admitted into evidence.

{¶ 39} In light of these criticisms, the state maintains that Dr. Swerdlow–Freed placed the interviews at issue and, accordingly, the recordings were properly played for the jury in their entirety under Evid.R. 106. Evid.R. 106 provides:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it.

The purpose of Evid.R. 106 is to "prevent one party from taking statements out of context and distorting them." *State v. Byrd*, 9th Dist. Lorain No. 03CA008230, 2003–Ohio–7168, ¶ 26. It "'contemplates a very high degree of discretion to be exercised by the trial judge.'" *State v. Arrington*, 12th Dist. Clinton No. CA2012–02–002, 2012–Ohio–5009, ¶ 12, quoting Weissenberger, *Weissenberger's Ohio Evidence Treatise*, Section 106.1, 49 (2011).

{¶ 40} Here, Wampler offered into evidence a report from Dr. Swerdlow–Freed that recited a number of the interviewer's questions and the children's answers without providing the context of those questions and answers. He also specifically concluded that due to improper technique, the interviewer elicited an inaccurate report from the children. The state was entitled to show the jury the recordings in their entirety so that it could properly evaluate the conclusions reached by Dr. Swerdlow–Freed. We find no abuse of discretion in the trial court's admission of the recorded interviews.

*Wampler*, 2016 WL 3574571, at *6-9.  Wampler does not argue that the Ohio Court of Appeals'

decision is unreasonable.  This claim fails on the merits.  *See, e.g., Johnson v. Wolfe*, 44 Fed.

App'x 702, 710-713 (6th Cir. Aug. 13, 2002) (no constitutional violation when a child's report to

third parties are admitted into evidence under the excited utterances exception to the hearsay rule); *Turner Wolfenbarger*, 2006 WL 2070394, at *7 (E.D.Mich. July 26, 2006).

With respect to Wampler's claim that the trial court erred when it allowed testimony by experts at trial regarding pedophilia and "grooming," the Ohio Court of Appeals explained,

{¶ 46} Wampler also claims that the trial court allowed the admission of irrelevant evidence when it permitted the state's expert, Dr. Schlievert, to testify as to "grooming" as it relates to sex offenses, and that the court erred in allowing the state to question Dr. Swerdlow–Freed about the mental health diagnosis of pedophilia. Even if not irrelevant, Wampler claims that the evidence was admitted in violation of Evid.R. 403 because the probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. He insists that the admission of the foregoing evidence was not harmless.

{¶ 47} As to Dr. Schlievert's testimony about grooming, the state urges that because M.H. testified that Wampler had shown him a pornographic movie, it was appropriate for the court to allow the state to elicit testimony from Dr. Schlievert about different ways that abusers "groom" their victims, including by exposing them to pornographic images as a way of desensitizing them to matters of a sexual nature. Wampler counters that one instance of exposing M.H. to pornographic images does not rise to a level of a "progressive stepwise situation," as described by Dr. Schlievert.

{¶ 48} We find no abuse of discretion in the trial court's decision to admit this testimony. For one, the viewing of pornographic images on Wampler's phone was not the only example that Dr. Schlievert gave of grooming. For instance, he also cited as an example of grooming Wampler's assurances to M.H. that everything was alright and that anal intercourse would become less painful with time. And Dr. Schlievert explained that there was no "cookbook pattern" method of grooming. In any event, defense counsel cross-examined Dr. Schlievert and he conceded that a number of typical grooming behaviors did not appear in this case.

{¶ 49} With respect to questions asked of Dr. Swerdlow–Freed about pedophilia, Wampler contends that he was never diagnosed as being a pedophile, thus testimony concerning the DSM–IV and DSM–V criteria for pedophilia was irrelevant. The state counters (1) that its questions about pedophilia focused on victim behavior, such as delayed disclosure, (2) that defense counsel agreed that the questioning was relevant as it pertained to victim behavior, and (3) the questioning was limited in scope, focusing only on factors that might prevent disclosure by the child, such as threats and attentiveness to gain the loyalty of the child. We agree with the state that the questioning was very limited in scope, was limited to victim behavior, and was, therefore relevant.

{¶ 50} Finally, we reject Wampler's contention that the prejudicial effect of this evidence outweighed its probative value.

{¶ 51} We find Wampler's third assignment of error not well-taken. *Wampler*, 2016 WL 3574571, at *10.  It cannot be said that the Ohio Court of Appeals' decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

Ground 3 fails on the merits.

### D. Ground 4 fails on the merits

In Ground 4, Wampler argues that the trial court erred when it denied his motion to dismiss the indictment for failing to provide adequate notice of the charges against him and to protect him from "future jeopardy."  Doc. 1, p. 11.  The Ohio Court of Appeals considered this claim:

{¶ 13} In his fourth assignment of error, Wampler challenges the trial court's denial of his pretrial motion to dismiss which was premised on Wampler's claim that the bill of particulars provided by the state was inadequate. In his sixth assignment of error, he claims that his trial attorney was ineffective for conceding the adequacy of the state's amended bill of particulars.

{¶ 14} The indictment in this case alleged six identical counts that read as follows:

THE JURORS OF THE GRAND JURY of the State of Ohio, within and for Lucas County, Ohio, on their oaths, in the name and by the authority of the State of Ohio, do find and present that TIMOTHY WAMPLER, on or between the 1st day of October, 2013 through the 31st day of December, 2013, in Lucas County, Ohio, did knowingly engage in sexual conduct with another who was not the spouse of the offender, or who was the spouse of the offender but was living separate and apart from the offender, when the victim was less than thirteen (13) years of age, whether or not the offender knew the age of the other person, and THE JURORS OF THE GRAND JURY further specifically find that the victim was less than ten (10) years of age, in violation of § 2907.02(A)(1)(b) and (B) OF THE OHIO REVISED CODE, RAPE, BEING A FELONY OF THE FIRST DEGREE PUNISHABLE PURSUANT TO § 2907.02(B), contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

{¶ 15} On May 22, 2014, Wampler filed a request for a bill of particulars. He claimed that while the allegations in the indictment recited the elements of the offense, they failed to provide adequate notice of the charges and protect him against double jeopardy because they employed only general language and failed to describe specific, identifiable

incidents. Wampler acknowledged that there is often some temporal uncertainty when younger victims are involved, but he insisted that the state failed to make a real effort to determine the dates with greater precision.

{¶ 16} In response, the state maintained that dates and times were not required to be specified, the bill of particulars need not provide the accused with specifications of evidence, and a bill of particulars is not required where, as in this case, the state has provided open-file discovery to the defendant. Nevertheless, it provided a bill of particulars that added the following language: "To wit: Timothy Wampler did knowingly engage in sexual conduct with another, M.H., who was not his spouse and was less than thirteen years of age."[2] It added this language with respect to each victim, including two counts for each victim.

> [FN2] We note that the date range of the offenses identified in the bill of particulars contains an obvious error. It is alleged that the incidents took place "between the 1st day of October 2013 through the 31st day of September 2013."

{¶ 17} On July 22, 2014, Wampler filed a motion to dismiss, complaining that "[t]here is no provided context of time or place, [and] nothing that remotely helps [him] match identifiable incidents to counts in the indictment." He contended that to constitute "constitutionally sufficient notice, the indictment must have criminal counts which are anchored to distinguishable incidents of alleged conduct." He maintained that the indictment did not protect him against double jeopardy, and he denied that there exists an "open-file discovery" exception to Crim.R. 7.

{¶ 18} On September 15, 2014, the state provided an amended bill of particulars. With respect to all counts, it narrowed the dates of the offenses to October 29, 2013, to December 8, 2013. With respect to Counts 1 and 2, it added: "To wit: Timothy Wampler did knowingly engage in anal intercourse and fellatio with another, M.H., who was not his spouse and was less than thirteen years of age." With respect to Counts 3 and 4, it added: "To wit: Timothy Wampler did knowingly engage in anal intercourse and fellatio with another, C.L., who was not his spouse and was less than thirteen years of age." And with respect to Counts 5 and 6, it added: "To wit: Timothy Wampler did knowingly engage in anal intercourse with another, N.L., who was not his spouse and was less than thirteen years of age." At a September 19, 2014 pretrial proceeding, counsel for Wampler conceded that the amended bill of particulars contained the required specificity. The court agreed and denied Wampler's motion to dismiss.

{¶ 19} Wampler claims that it was error for the trial court to deny his motion to dismiss and that trial counsel was ineffective for stipulating to the adequacy of the amended bill of particulars. He insists that the amended bill of particulars still lacked "information sufficient to delineate distinguishable incidents of alleged conduct," that he lacked adequate notice of the charges against him, and that he was not protected from future jeopardy.

{¶ 20} "An indictment is sufficient if it (1) contains the elements of the offenses; (2) gives the defendant adequate notice of the charges; and, (3) protects the defendant against

double jeopardy." *State v. Adams*, 2014–Ohio–5854, 26 N.E.3d 1283, ¶ 28 (7th Dist.), citing *Russell v. U.S.*, 369 U.S. 749, 82 S.Ct. 1038, 8 L .Ed.2d 240 (1962). The time and date of the offense is not required to be included in an indictment. *State v. Stefka*, 2012–Ohio–3004, 973 N.E.2d 786, ¶ 50 (7th Dist.). This is especially true in cases involving the sexual abuse of children. In such cases, it is sufficient to set forth a time frame during which the offenses occurred. *Id*.

{¶ 21} Crim.R. 7(E) provides that upon a timely written request or upon court order:

> The prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge and of the conduct of the defendant alleged to constitute the offense. A bill of particulars may be amended at any time subject to such conditions as justice requires.

{¶ 22} "[T]he purpose for giving a bill of particulars is to elucidate or particularize the conduct of the accused, but not to provide the accused with specifications of evidence or to serve as a substitute for discovery." (Internal citations and quotations omitted.) *State v. Barrett*, 8th Dist. Cuyahoga No. 89918, 2008–Ohio–2370, ¶ 16. It is not intended to take the place of formal discovery. *Id*.

{¶ 23} In arguing that the indictment, as supplemented by the amended bill of particulars, did not provide adequate notice or protect against jeopardy, Wampler relies on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), where the Sixth Circuit found that the 40–count indictment was constitutionally defective because each count was identically-worded and failed to distinguish the factual bases of the charges. However, "[c]hallenges based on *Valentine* have been rejected where the testimony and/or a bill of particulars provided sufficient differentiation among the counts of sexual abuse." *State v. Artz*, 2015–Ohio–5291, ––– N.E.3d ––––, ¶ 34 (2d Dist.).

{¶ 24} Here, the time frame in the amended bill of particulars was narrow—an approximate six-week window. The counts were separated out by child. And the counts specified the manner of penetration (anal intercourse and fellatio as to M.H. and C.L.; anal intercourse as to N.L.). In addition to this, "[e]ven if [a] bill of particulars is insufficient in itself, the defendant must show that lack of knowledge of certain facts required to be placed in the bill of particulars prejudiced his ability to fairly defend himself." *State v. Donkers*, 170 Ohio App.3d 509, 2007–Ohio–1557, 867 N.E.2d 903, ¶ 140 (11th Dist.). Wampler fails to explain how he was prejudiced here, and, in fact, the record suggests that there was no prejudice to Wampler. The record indicates (1) that the state agreed to provide witnesses' statements to defense counsel pursuant to a protective order, (2) defense counsel told the court at a pretrial that "everybody knows what the anticipated evidence is or isn't," and (3) defense counsel was able to provide to his retained expert psychologist police reports, the recorded interviews of the victims, reports from children's services, and hospital records, all of which provided specificity about the victims' allegations.

{¶ 25} Because we conclude that the bill of particulars provided sufficient specificity and that Wampler was not prejudiced by any purported insufficiency in the bill of particulars,

we find no error in the trial court's denial of Wampler's motion to dismiss. We also find that trial counsel was not ineffective in acquiescing to the adequacy of the indictment and bill of particulars.

{¶ 26} We find Wampler's fourth and sixth assignments of error not well-taken.

*Wampler*, 2016 WL 3574571, at *3-5.

The Ohio Court of Appeals' decision was not unreasonable.  The undersigned notes that *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the case Wampler relied upon on direct appeal (and cites in support of his related Ground 6 in his Traverse (Doc. 18, p. 11)), does not provide the necessary precedent to obtain habeas relief in federal court.  *See Williams*, 529 U.S. at 412 ("Clearly established federal law" pursuant to 28 U.S.C. § 2254(d) refers to United States Supreme Court decisions); *Coles v. Smith*, 577 Fed. App'x 502, 507-508 (6th Cir. 2014) (explaining that, after *Valentine* was decided, the Supreme Court, in *Renico v. Lett*, 559 U.S. 766 (2010), admonished the Sixth Circuit "that 'clearly established Federal law' means relevant Supreme Court precedent and not circuit court opinions"; accordingly, the petitioner's claim that his indictment was not sufficient per *Valentine* was rejected because the petitioner had not identified a Supreme Court case that would entitled him to relief).  Moreover, in *Valentine*, two sets of identically worded 20 counts in the indictment (40 total) provided no distinguishing features—merely reciting "child rape" and "felonious sexual penetration."  395 F.3d 626, 628, 633-634.  In Wampler's case, the state's amended bill of particulars for each of the six counts in the indictment included the identity of the victim and the specific acts Wampler was accused of (anal intercourse, fellatio).  Doc. 7-1, pp. 31-33.

Ground 4 fails on the merits.

**E. Ground 5 is not cognizable**

In Ground 5, Wampler argues that the trial court erred when it found one of the child victims, N.L., competent to testify.  Doc. 1, p. 13.  Wampler presented this claim to the Ohio

courts, and in his Petition, as a violation of Ohio R. Evid. 601.  *Id.*; Doc. 7-1, pp. 110-111.

Violations of the Ohio Rules of Evidence are not cognizable in a federal habeas case.  *See*

*Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983) (alleged state law evidentiary errors are not

cognizable for federal habeas relief).

### F. Ground 6 fails on the merits

In Ground 6, Wampler argues that his trial counsel was ineffective for conceding that the

indictment and amended bill of particulars was sufficient to provide notice of the charges.  Doc.

1, p. 14 (see discussion of Ground 4, supra).  The Ohio Court of Appeals found that Wampler's

trial counsel was not ineffective for acquiescing to the adequacy of the indictment and bill of

particulars because the indictment and bill of particulars were adequate.  *Wampler*, 2016 WL

3574571, at *5; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to establish ineffective

assistance of counsel, a defendant must show that counsel's performance was deficient and that

he was prejudiced as a result).  The Ohio Court of Appeals' finding was not unreasonable;

counsel is not ineffective for failing to raise meritless claims.  *See Moore v. Mitchell*, 708 F.3d

760, 778 (6th Cir. 2013) (counsel is not ineffective for failing to raise a meritless claim).

In his Traverse, Wampler alleges, for the first time, that trial counsel was ineffective for

failing to investigate witness statements (Doc. 18, pp. 11-12).  A court is not required to address

a theory of relief asserted only in a traverse but not in the habeas petition.  *See Tyler v. Mitchell*,

416 F.3d 500, 504 (6th Cir. 2005).  Moreover, any such claim would be procedurally defaulted

because Wampler never presented it to the Ohio courts.  *See McMeans v. Brigano*, 228 F.3d 674,

681 (6th Cir. 2000) ("A claim may only be considered 'fairly presented' [for jurisdictional

purposes] if the petitioner asserted both the factual and legal basis for his claim to the state

courts[,]" citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)).

Ground 6 fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Wampler's Petition be **DENIED** because Grounds 2 and 5 are not cognizable and Grounds 1, 2, 4, and 6 fail on the merits.

Dated: July 27, 2018

/s/ Kathleen B. Burke
_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).